United States District Court
District of Massachusetts

|  |  |
|---|---|
| United States, | ) |
| | ) |
| v. | ) Criminal Action No. |
| | ) 24-10389-NMG |
| Jason Monteiro, | ) |
| | ) |
| Defendant. | ) |
| | ) |

MEMORANDUM & ORDER

GORTON, J.

Pending before the Court is the motion of defendant, Jason Monteiro ("defendant"), to suppress evidence obtained by the government without a warrant during the search of a vehicle. For the reasons set forth below, the motion will be denied.

I. **Background**

The government's investigation into defendant's conduct began in June, 2024, when police executed a search warrant at an apartment in Fall River, Massachusetts, as well as a storage unit in Swansea, Massachusetts, and a vehicle belonging to an unnamed individual. That individual later became a confidential informant ("CI") and implicated defendant as a supplier of cocaine.

During several meetings with police, the CI attested to defendant's alleged drug dealing activities. He first implicated himself by alleging that he had known defendant for

- 1 -

several years and had purchased cocaine from defendant on
several occasions.  In addition, the CI alleged that defendant
kept a drug "stash house" in New Bedford, Massachusetts.  He
also provided law enforcement with recordings of several phone
calls, allegedly made between the CI and defendant, in which
they discuss drug transactions using slang terminology,
including the prospect of obtaining "solids" (crack cocaine in
brick form).  They discussed whether defendant could get the
drugs at a lower price from his "man" which police believed to
be in reference to defendant's alleged drug supplier.  According
to the CI, he had seen cocaine in defendant's vehicle and
believed defendant got his cocaine from out of state, probably
Connecticut.

Police later confirmed that defendant maintained an address
in New Bedford and they engaged in surveillance there.  They
corroborated defendant's interstate travel through license plate
reader data, which indicated that defendant had traveled to the
same location in Connecticut in August and September, 2024.
They were aware that defendant had a previous conviction for
drug possession for which he remained on federal supervised
release.  Based upon information provided by the CI which was
further corroborated, police obtained a warrant to track
defendant's cellphone in October, 2024.

Following the issuance of the warrant, the CI informed police that he had loaned his red Ford Explorer to defendant. With the CI's consent, police attached a GPS tracker to the vehicle and subsequently observed defendant meeting with unidentified persons in Connecticut. As defendant was returning to Massachusetts, police stopped the vehicle and ordered defendant out of the car. An officer patted down defendant and then searched the vehicle. He found a paper bag behind the driver's seat containing two boxes, each filled with roughly two kilograms of cocaine.

That same day, police also arrested the CI based upon his own possession of cocaine. Following an investigation into his prior drug possession, the CI served as a confidential source for the Drug Enforcement Administration ("DEA"). According to the warrant affidavit, police believed him to be credible but the DEA has since indicated an intent no longer to rely on him. Defendant contends that decision was based upon the CI's failure to inform the police about his own crimes.

In December, 2024, defendant was indicted for unlawful possession with intent to distribute cocaine in violation of 21 U.S.C. §841(a), to which defendant has pled not guilty. Defendant now moves to suppress evidence of the cocaine that police discovered during the October, 2024, search of the vehicle.

- 3 -

## II. Legal Standard

Under the Fourth Amendment to the United States Constitution, law enforcement cannot conduct a search for evidence without a warrant, unless the search falls under one of several longstanding exceptions to the warrant requirement. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). If evidence is obtained by law enforcement during a search without a warrant or applicable exception, it is subject to suppression under the "exclusionary rule" and cannot be admitted at trial. See United States v. Calandra, 414 U.S. 338, 354 (1974). When a defendant moves to suppress, he bears the burden of proving that the search occurred without a warrant or applicable exception. See United States v. Young, 835 F.3d 13, 19 (1st Cir. 2016).

## III. Analysis

In this case, there is no dispute that police did not have a warrant to search the vehicle and, according to defendant, the only potentially relevant exception to the warrant requirement, the "automobile exception," is inapplicable in this case.

### A. Automobile Exception Standard

The automobile exception authorizes police to search inside a vehicle without warrant based upon the inherently transitory nature of vehicles which renders strict adherence to the warrant requirement "practically impossible" for police. Carroll v. United States, 267 U.S. 132, 153 (1925); United States v.

- 4 -

Simpkins, 978 F.3d 1, 7 n.1 (1st Cir. 2020).  Under that
exception, an officer may search a vehicle if he has "probable
cause" to do so. Carroll v. United States, 267 U.S. 132, 153.

Probable cause to search a vehicle exists when the facts
available to the officer at the time of the search would cause
an individual of "reasonable caution" to believe "contraband or
evidence of a crime" would be present in the vehicle. Florida v.
Harris, 568 U.S. 237, 243 (2013).  To determine the existence of
probable cause, courts do not rely upon a "precise definition or
quantification." United States v. Dion, 859 F.3d 114, 131-32
(1st Cir. 2017).  Instead, it is incumbent upon courts to assess
the "the totality of the circumstances" surrounding the search
and to determine whether those circumstances supported a "fair
probability" that evidence would be found. Id. at 132.

The basis for an officer's probable cause to search a
vehicle can include information that the police obtained from a
confidential informant, provided that the informant is credible.
United States v. White, 804 F.3d 132, 136-37 (1st Cir. 2015).
When assessing an informant's reliability, courts need not
definitively determine whether an informant is lying to find
that probable cause is present. See United States v. Greenburg,
410 F.3d 63, 69 (1st Cir. 2005).  To assess credibility, courts
instead consider a "non-exhaustive" list of three factors:

> 1) the informant's "basis of knowledge" and whether that
> knowledge is first-hand, 2) whether police corroborated the
> informant's assertions, wherever "reasonable and
> practicable," and 3) whether police used their "experience
> and expertise" to assess the information provided.

Id. at 137 (citing United States v. Tiem Trinh, 665 F.3d 1, 10-
11 (1st Cir. 2011)).   Because all three factors need not be
met, a strong showing as to one factor may counterbalance a
lesser showing as to others. See Tiem Trinh, 665 F.3d at 11.

### B. Confidential Informant's Criminal Activity

Defendant first suggests that the CI was unreliable because
he contemporaneously engaged in drug-related conduct and lied to
police by not telling them about it.

When a confidential informant engages in criminal activity
of his own or is otherwise dishonest, such conduct, alone, is
insufficient to negate the informant's credibility. See United
States v. Leonard, 17 F.4th 218, 225 (1st Cir. 2021) (reasoning
that an informant could be credible even though he "had pending
charges at the time").   As the First Circuit Court of Appeals
("the First Circuit") has reasoned, those who possess
information about drugs, such as the CI in this case, are
"unlikely to be persons of impeccable moral integrity," and thus
courts cannot expect informants who have an intimate knowledge
of cocaine to be of good moral character as well. United States

- 6 -

v. Brown, 500 F.3d 48, 55 (1st Cir. 2007).  All "the law requires" is that the information be reliable in the totality of circumstances.  Id.; see United States v. Francis, 132 F.4th 101, 108 (1st Cir. 2025) (concluding that a confidential informant was sufficiently credible even though he was facing criminal charges).  Thus, the informant here need not be blameless to be deemed credible.

In his argument to the contrary, defendant principally relies on two decisions from other circuits that have found a lack of probable cause where an informant had a history of dishonesty or had been charged with criminal conduct: United States v. Lull, 824 F.3d 109 (4th Cir. 2016), and United States v. Alford, 764 F. Supp. 3d 191 (M.D. Pa. 2025).  In Lull, police relied on a tip from an individual in the affidavit used to obtain a warrant.  Lull, 824 F.3d at 112-13.  On appeal, the Fourth Circuit determined that the affidavit was legally deficient because it failed to address the informant's reliability, namely the informant's criminal conduct and history of arrest.  Id. at 116-17.  In Alford, the district court similarly found a warrant to be invalid because the affidavit that police used to support it failed to indicate that police no longer relied on that person as an informant based upon his own unlawful drug possession.  Alford, 764 F. Supp. 3d at 248-49.

Unlike Lull and Alford, this is not a case in which defendant questions the validity of a warrant affidavit based upon a failure of the police to disclose to the magistrate that an informant was a criminal. Cf. Lull, 824 F.3d at 118; Alford, 764 F. Supp. 3d at 248-49. Rather, defendant questions the credibility of, and validity of relying upon, an informant who engaged in criminal or drug-related conduct in the first place. Neither case he cites, however, stands for the proposition that an informant must be deemed incredible based solely upon his own misconduct. Even in the Fourth Circuit, in which Lull was decided, courts have held, as the First Circuit did, that an informant's own criminal activity does not, in itself, render him unreliable. See Leverette v. Bell, 247 F.3d 160, 168 (4th Cir. 2001). So too have many other federal courts. See, e.g., United States v. Taylor, 471 F.3d 832, 840 (7th Cir. 2006); United States v. Dennis, 625 F.2d 782 (8th Cir. 1980). Thus, while the disclosure of a confidential informant's crimes or dishonest acts may be necessary to obtain a valid warrant, see, e.g., Lull, 824 F.3d at 118, defendant here has not met his burden of demonstrating that the automobile exception is inapplicable merely because police relied upon an informant who was also a criminal. See Brown, 500 F.3d at 55; see also Taylor, 471 F.3d at 840.

## C. Other Indicia of Reliability

Defendant further submits that the searching officer lacked probable cause sufficient for the automobile exception because 1) he did not have a longstanding relationship with the CI, who only served as such for a matter of months, and 2) police did not sufficiently corroborate the CI's information, namely, by failing to confirm that the recorded phone calls he provided were, in fact, from defendant or by witnessing any drug transactions, which they could have done through "controlled buys."

An informant's prior track record of providing voluminous information to police may bolster a finding that he is reliable. See Tiem Trinh, 665 F.3d at 10-11, see also United States v. Zayas-Diaz, 95 F.3d 105, 112 (1st Cir. 1996) (recognizing an informant's "demonstrated . . . reliability in the past" supported his credibility). An informant need not, however, have an extensive track record working with police or documented instances of previous success to be deemed reliable. See United States v. Taylor, 985 F.2d 3, 6 (1st Cir.1993) ("[A]n informant's reliability need not invariably be demonstrated through the detailed narration of the information previously furnished to law enforcement."); see also United States v. Cochrane, 896 F.2d 635, 641 (1st Cir. 1990) (indicating that a finding of probable cause does not rest solely upon "previous

- 9 -

reliability" because the "appropriate inquiry" is "whether the informant's present information is truthful or reliable").

When engaging a confidential informant, the burden ultimately rests on the government to vet the informant thoroughly and to determine whether his or her allegations can be corroborated. See Illinois v. Gates, 462 U.S. 213, 241 (1983); United States v. Ramirez-Rivera, 800 F.3d 1, 29 (1st Cir. 2015). Every factual allegation made by an informant need not, however, be buttressed by extensive factual findings. See United States v. Schaefer, 87 F.3d 562, 566 (1st Cir. 1996), Other considerations, such as the informant's first-hand knowledge or risk he assumed by informing police, can bolster his credibility notwithstanding. See Tiem Trinh, 665 F.3d at 11; Ramirez-Rivera, 800 F.3d at 28; Greenburg, 410 F.3d at 67-68.

In this case, law enforcement did not engage in a controlled buy or corroborate the phone records, see United States v. Ramirez-Rivera, 800 F.3d 1, 29-30 (1st Cir. 2015) (recognizing controlled buys as a useful tool for law enforcement, overruled on other grounds by United States v. Leoner-Aguirre, 939 F.3d 310 (1st Cir. 2019); see also Riley v. California, 573 U.S. 373, 401 (2014) (highlighting cell phone information as a source of "valuable incriminating information), but corroboration of every allegation the informant makes is not required. See Schaefer, 87 F.3d at 566. Nor is it dispositive

that the CI had a criminal history and had worked with law enforcement for only a few months. See Taylor, 985 F.2d at 6; see also Cochrane, 896 F.2d at 641.

Instead, as the government accurately asserts, other salient factors support a finding of probable cause. First, the CI attested to his first-hand knowledge of interactions with defendant, including personal knowledge of where defendant lived and traveled. See Tiem Trinh, 665 F.3d at 11; United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002) ("The credibility of an informant is enhanced to the extent he has . . . indicate[d] first-hand knowledge."). The CI had also acted not merely as an anonymous source for police but was also known to them as a DEA informant, met directly with law enforcement several times and assumed the risk of incriminating himself as a part of drug transactions. See Ramirez-Rivera, 800 F.3d at 28 (indicating that law enforcement's history with an informant can establish reliability); Greenburg, 410 F.3d at 67-68 (indicating that incriminatory statements from informants are "likely to be true because of the risk inherent in making such a statement"). Finally, the affidavit in support of the search warrant indicated law enforcement's informed assessment that the individual was credible and reliable, further supporting probable cause. See Tiem Trinh, 665 F.3d at 11 (indicating that police assessment of credibility supports probable cause).

Law enforcement also sufficiently corroborated the CI's information in several ways.  At the time officers stopped defendant and found the boxes of cocaine, they had more information than just what had been obtained from the CI.  They had engaged in physical surveillance of defendant's residence, used license plate reader data to confirm his several trips to Connecticut, tracked the vehicle defendant had borrowed from the CI and observed defendant meeting with unidentified persons who police believed to be drug suppliers in Connecticut. Ultimately, all of that information led to defendant's arrest. See Tiem Trihn, 665 F.3d at 12 ("[C]orroboration of even innocent activity reported in the tip may support a finding of probable cause.").  The police were also aware that defendant had previously been convicted of drug crimes and that, at the time of his arrest, he was on supervised release. See United States v. Bean-Bousseau, 648 F. Supp. 3d 348, 357 (D. Mass. 2023) (considering a defendant's criminal history as part of the totality of circumstances establishing probable cause).  Taken together, the information available to police is sufficient for the Court to conclude that probable cause existed for the search.  The motion to suppress will therefore be denied.

<u>ORDER</u>

For the foregoing reasons, the motion to suppress of defendant, Jason Monteiro, (Docket No. 37) is **DENIED**.

**So ordered.**


_Nathaniel M. Gorton_
Nathaniel M. Gorton
Senior United States District Judge



Dated:  August 15, 2025